Good morning, Your Honors. My client, Absinthe Bar, LLC, has been in and out of court with its tenant, Bourbon Saloon, since around 2008. It holds a valuable lease, several state court consent judgments, and even a bankruptcy consent judgment. My client's state court eviction proceeding was interrupted by this bankruptcy in 2011. This court has been consistently clear that lease assumption is not an automatic right of a debtor. Let me ask you a question about that. We have an agreed order that says the lease is assumed. Now, well, irrespective whether or not that order is comprehensive as to the requirements of 365, at what point did you raise that issue? Did you raise that to Judge Brown? We raised it to Judge Brown, but we raised it immediately . . . I'm sorry, I didn't mean to cut you off. Go ahead. We did not realize that the position that Bourbon Saloon was going to take, which was, hey, we're not just duking out cure here. This isn't just a construction dispute for the first prong, and we fix everything later. This is a comprehensive . . . we didn't find that out until March 20th when they filed an opposition to our lease . . . That's still a week before the trial occurred, and some months before Judge Brown issued his opinion. What struck me was that he knows the law in this area, and his opinion did not dwell on that argument at all. I was wondering how you had properly preserved it on appeal to the district court. Okay. The district court didn't consider waiver. The other side didn't raise waiver, but it bothered me. Right. In Judge Brown's opinion, it was odd that he said that ABAR didn't raise any support for this, whether or not full-scale lease assumption had taken place. We raised it in not only our lease rejection motion, which was filed January of 2013, well before the times before the judge's submission, which was that pretrial memo, our lease rejection, and then two separate court-ordered post-trial memos that were in June of 2013. That was four months before he issued his ruling, and we strenuously argued that we were under the impression here, which is why we immediately moved . . . as soon as December 31st happened, we immediately moved saying that this is, as Judge Brown said in a February hearing, this is a done deal. We have a failure on the first prong, which we contractually agreed to. This was how we were going to approach CURE. Without that, we can't have assumption, and Judge Brown, in response to that motion, actually issued a scheduling order, and that's at record 1445. That scheduling order ordered us to brief whether or not this agreed order was subject to a suspensive condition, which would basically dissolve the lease or at least deny assumption under the code, or whether it was a resolutory condition. So we knew that we had properly preserved it, and that portion of the memorandum opinion was puzzling to me as well. Well, let me tell you what I drew from the memorandum opinion, aside from it's not ruling specifically on that, was that he had perhaps forgotten exactly what was in the agreed order, because in the memorandum opinion, he goes into, oh, they agreed. They said it's assumed. I'm reading that, he says to himself, it's assumed, and this is just, you know, something that they have to do in connection with the assumption, but he went on and added that they had spent $300,000, and then that they had claimed to set aside $30,000 or $40,000 for future repairs. Well, I think in the months following that, when we moved for what we called lease rejection, which we don't have the right to move for rejection, but we do, what it was was a supplement to our early, almost a year early, over a year earlier, our opposition to assumption. How do you get around the fact that you agreed to an order that said the lease is assumed? Well, and I think Judge Brown keyed in on that really well, because, and this was in October, remember, this was in October, after everything had been submitted, after we had time and again urged, this really wasn't an assumption, a consent judgment on assumption. It was a roadmap to cure. Now, in the written ruling, Judge Brown openly, you know, admits that he, as the fact finder and the ultimate arbiter, didn't understand what the agreed order was about. At that point, he's obliged, under Louisiana law, interpreting a contract. That is, at that point, that is de facto, de jure, that is a doubtful provision, and he has to start applying the proper code articles to interpret what that was, and if that had taken place, whether by Judge Brown, whether either Judge Brown, District Court Judge Brown either, it didn't happen. Why is it so simplistic for me to take the, to infer from what he wrote and what your order said, a sum assumed is assumed? Well, what about the other two prongs of 365? That's a, remember, that's a, the starting point is prohibitory. Well, you didn't, I don't think you cited a single case where an agreed order, and I'm not, you know, I'm very enthusiastic about enforcing 365 as it was written, but on the other hand, this is post-confirmation. I'm sure that the confirmation depended on the maintenance of this business, which was the saloon, so no other creditors are adversely affected. It's an agreed order, and, and, and they, you know, substantially complied with their duty to make repairs. Noting your first point that this was post-confirmation, that's an, that's a very, that's an equitable argument that we shouldn't bear the burden on. The fact that they waited to do anything, and when I say waited to do anything. It's obvious they were dilly-dallying. So we, we, we, you know, we, we did everything as soon as we could. We were there. We were ready. We submitted every bit of, of default, and, and it was in front of the referee, and it wasn't until almost a year later. So the fact that this was post-confirmation, and remember, there were several strenuous objections from creditors. Gold King filed an objection to plan confirmation. The two leases had not even been assumed at confirmation. There were two assets, actually three assets, one a management contract and two leases. Neither lease had been assumed and would not be assumed until about a year later after confirmation. So there were creditors that noted this, and even Judge Brown at, at, at trials essentially said in response to that equitable argument, look, con, confirmed plans are not always cons, consummated, and 365 has to be applied. Now, in response to, I think I forgot the second part of your question. What if Bourbon Soon had met the cure deadline on the 30th? Would it, would assumption then have been automatic? Had, had met it. Had met it. Had met it, then we would have needed to discuss attorney's fees. No. We would not have challenged, I'll tell you this, we, my client would, if, had it done what it had agreed to in timely and in a workmanlike manner. Would the assumption? We would not, by law, the assumption would not have been automatic because we had not, we had yet to discuss either attorney's fees or adequate assurance of future performance. But we wouldn't have demanded that type of hearing, which in the Fifth Circuit is extremely fact specific, and the judge, when we approached him. You, I mean, if, if you prevail on the attorney's fees, you get the option of recovering all costs and the bankruptcy court has made a finding that they have cured. That finding was only in the, to the extent that we could call this dicta, the cure wasn't even necessary. Now, remember, the lease was assumed, under the bankruptcy ruling, the lease was assumed strictly by virtue of the agreed order, done. After that, it considered our lease, what we called our lease rejection motion, which was still, well, you can call it whatever you want, but you were saying that they weren't complying with the deal that had been struck. Well, at that point, at that point, Your Honor, there was no more of the 365 protection as far as Judge Brown is concerned. Now this was a regular . . . That's not, that's not, this is a hybrid proceeding. It's, I mean, the way it all evolved, but no, he, he proceeded to award you the attorney's fees from, he, why you, he awarded you, said you were entitled to attorney's fees as an administrative priority. Because I have a problem with that . . . You don't want them yet. Oh, I'm sorry. I'm sorry. Did I interrupt you? Well, and the third other thing was he said that they had put away thirty or forty thousand for future repairs, like adequate assurance. Your Honor, that, that, number one, in terms of the attorney's fees award, Judge Brown awarded those supposedly under the code, under 365B1B. That is, those are prerequisites to assumption. Those are prerequisites to assumption. He had just, he had just ruled that assumption was taken care of by consent. So he gave you more than you, you know, he gave you what you wanted. Well, we would have been entitled, we would have been entitled to those attorney's fees as a post-assumption breach, which are still administrative expenses. Didn't he substantially comply? Did the debtor substantially comply? No, the bankruptcy judge. No, he erred several times very badly. The problem is that we, not only does 365 guarantee you certain stuff, it guarantees you certain stuff in a certain order. And until that happens, there hasn't been assumption here. It guarantees you certain stuff in the order. These agreed upon assumptions are pretty common. Do you have any case that's formalistic that way in that had he actually then spelled out each element, whether there's no objection in a timely fashion or not, then your argument wouldn't exist? You just. Had the agreed order satisfied 365? Absolutely. Absolutely. But what case do you have that has found fault with other agreed upon orders? Almost. No cases, Your Honor, deal with, especially in the Fifth Circuit. As a matter of fact. Well, there's any case anywhere. The closest is actually that Leon's Casuals case. That works against you? It doesn't work. Your Honor, I don't want to ask you a question. I think the Leon's Casual case, as much as it's persuasive on Your Honor, works for us because in Leon's Casual you have a landlord who had all these cure rights and he demanded certain cure rights in a consent judgment. And then he came back later and he said, wait, I have more cure rights. And the judge said, yes, you're right. The rights that you have spring from the code. And regardless of this consent judgment, these code rights are still here until you expressly waive them. And he did that by basing it on the starting point, which is prohibitory. You cannot assume in bankruptcy a defaulted lease unless 1, 2, and 3. And a consent judgment falling short in two-thirds of that, it hasn't been addressed anywhere. It hasn't been addressed because nobody wants anything but cure. These landlords usually just want their rent paid. Every once in a while it's attorney's fees. Well, your client may want a little bit more than that. But I assume they made up any default in the monetary lease, right? The rent was being paid. But remember, there has never been, and I've researched this now for almost five years, there's never been a non-debtor landlord in this position where their eviction proceedings were actually interrupted. And that basically- I don't believe that. That happens- Well, not a reported decision. Asset things, that's got to happen all the time. It could very well be. It could very well be, Your Honor. The problem, though, the problem, though, is- What is- this is a 20-year lease, 97, so it's coming close determination anyway? No, second term of 20 years. They've got an option to- So we've been in court for the half of our first term, state court and bankruptcy court. The first term ends next year. Yes, yes, Your Honor. And so the idea here, the idea here is that this type of landlord is protected by 365. The agreement that we can- Why didn't you get it, why didn't you get the stay lifted or, you know, immediately after on the basis of non-performance? You mean non-performance with our consent judgment and try to evict- No, way before, about the time that they fought. Why didn't you haul into- did you haul into court shortly after they filed Chapter 11 and say assume or assign within 60 days? Isn't that what the law requires? Well, that's- there's a big, big dispute on that end. That delay, 60 days, 120 days, or by consent, you don't have to assume within that. You just have to file your- you have to make your decision. We really- there were several creditors that were all huddling and we were saying, these guys are never going to be able to assume within that, and finally, we realized that the rule really is, you just have to decide whether to assume or reject and make the appropriate motion, which these guys did. We went to work right away, we opposed, we continued our opposition, we made it clear that we wanted everything under the code. We confected an agreement, we confected an agreement which has been interpreted incorrectly. Well, why did you allow a plan to be confirmed before you had definitively handled the assumption? We didn't have the authority to block it, and my client didn't want to vote. Well, why not? You're a disadvantaged creditor on the major asset, and I assume it's a major asset? Very major asset. We were provided for, there was a carve out that we worked with the debtors council on, just to make sure that this assumption was in no way contested, and even provided for the remedies in the event that it was rejected. So we did what we could. I see I'm just about out of time, Your Honor. Thank you. Okay, well you have a chance for rebuttal.  May it please the court. Your Honor, this was the main asset in this bankruptcy. This is what the entire Chapter 11 reorganization was based on. And now, four years later, we're still addressing a collateral attack on an agreed order that was prepared by counsel and then submitted to Judge Brown. Well, if your client hadn't been so dilatory in making repairs, you might not be in this mess. Your Honor, I agreed, Your Honor. And I would assume that in a lot of Chapter 11 reorganizations, you have financial considerations. I think the important thing on this one is that once the reorganization plan went into effect four years ago, creditors have been paid 100 cents on the dollar. I mean, right now we have the benefit of hindsight. What we're looking at was Judge Jerry Brown. Was he within his authority? Did he use his discretion in making the rulings he made? He didn't make it 30 days ago. He made it over three years ago. And we get to look at what's happened over those past three years. And when we do, we see that creditors have been paid 100 cents on the dollar, and we are just 20 months away from being outside of the Chapter 11 reorg. What do you mean, you mean that was confirmed 20 months ago? Well, once we do 20 more months, we're going to be outside of the Chapter 11 totally. We're going to have repaid all creditors. We'll be a standalone corporation. I thought you said you already paid them 100 percent. No, we're paying them 100 cents on the dollar in accordance with the plan. By the time it's completed. Yes, Your Honor. So in 20 more months, we're going to be a standalone company. I mean, this is exactly what Chapter 11 is for. I mean, so when we're looking at did Judge Jerry Brown do the right thing in using his deference to allow them an additional. You have to follow the law. So, I mean, there's a lot going on here in terms of negotiations, but we do have to follow the law ultimately. And I understand and appreciate that, Your Honor. One thing that I do want to point out. It's very clever of you that the consummation of the plan occurs after your option to renew your lease. Yes, it does, Your Honor. I understand that. But I mean, at that point, it will be a standalone corporation. Obviously, when this was entered, we had 20 years and 20 years and no one knew that this would have would have been. And I think that's an interesting point. I mean, you know, back in 1997, Bourbon Street was a whole lot different than it is today. And rental rates were a whole lot different than it was. We were walking into a failed company in 1997. Failed business on that corner. Well, why don't you move on and tell us that? I will, Your Honor. One thing that I want to address that is in the record. It was in Judge Jerry Brown's decision. It was not something that was was briefed, but he thought it was important enough. When we look at footnote 40 to his October 2013 decision, footnote 40, I believe that's why we're here. And I think that is the entire thrust of this case. Testimony came out at trial that there was a huge financial incentive, a one time very large payment, as well as a nearly double lease payment that was being offered to Absinthe Bar if they could get out of our lease. You're arguing the practicalities again. I understand, Your Honor. There are three things that I want to talk about. I want to talk about the May 15, 2012 agreed order, the substantial completion of repairs and then the attorney's fee issue, which I believe there's still a small part of that is before the court today. Under the May 15, 2012 order, there are two attacks on it. Number one, that it's void because it's not extensive enough under the language. Number two, that there's a suspensive condition. On number one, that it's void because it doesn't include enough language. Your Honor, we go back to the fact of this was an agreed order between counsel that was then submitted to Judge Jerry Brown, who then approved it and filed it into the record. Counsel, if counsel wanted something different in the agreed order, that is certainly something that could be negotiated between parties. Any of those issues, once you enter the agreed order, any of those issues are going to be waived, Your Honor. When did they first object to the lack of description of the second and third elements? They objected to the agreed order. It was months after the assumption of that lease. Well, that's because you didn't complete the repairs. Your Honor, we had we had until December 31st of 2012. Right. And within a week of that, they filed two weeks. They filed their motion because you had not completed the repairs. That is correct, Your Honor. And that goes to the substantial completion of repairs. That is under the 2014 Louisiana Civil Code article. The second argument for the May 15, 2012 agreed order that they're making is that it's to a suspensive condition. Before you get to that second on this waiver notion, what's your best case that the parties can, by agreement, waive description, reference at all to those two elements? Your Honor, the only case that's been cited is the In Re Leon Casuals case, where it was done in that case by agreed order that was also approved by the court. And in that situation, they allowed the lease to be assumed and they went forward. On the suspensive condition, the the agreed order, once again, drafted by counsel and approved by the court, clearly says that the lease was assumed. The fact that it says subject to does not create a suspensive condition under 27, or so under 1767 of the Civil Code, Your Honor. The reason for that is when you want to create a suspensive condition, it needs to be delineated in that agreement. Saying subject to would be an expansion on the obligation articles. And Your Honor, you'd asked before when you said that nothing was provided by ABAR, and Judge Jerry Brown had said that in his decision. I believe what Judge Brown was referring to was the fact that no support for that proposition, that saying subject to automatically transitions an agreement into a conditional that's going to be under 1767 of the Civil Code. There was no cases provided to Judge Brown to do that. Are you calling it a resolatory condition? I believe it would be a suspensive condition because I believe the position that ABAR is taking is that it does not it does not happen until you fulfill these requirements. And that's where the subject to comes from. Well, subject to usually means suspension. I thought you were arguing it didn't. Your Honor, that's exactly what I'm arguing. I'm arguing that it does not create any conditional obligation. It says the lease is assumed. Wouldn't it be resolutory? It would dissolve the lease if they didn't comply. Well, it would talk about that for one second. If we have a lease, you know, Party A is going to lease a premises from Party B subject to the following terms, one of which is the payment of the lease. Just because you would be a day late on a payment of a monthly lease obligation would not extinguish. And that's exactly what I'm getting at. That doesn't extinguish the entire lease. I mean, the lessee has rights at that point just because you'd be one day late, technically, if you're going to take their argument, you're going to take their expansion that the word subject to transform this entire agreement to 1767 of the Civil Code. You put it in the context of the history of this case. And on December 31, they didn't do it, but he said it was substantially done. But here's what has to be done. Well, what happens if that's not done? The lease is dissolved. Yes, the lease would be dissolved at that point, but the judge did found substantial completion based on this factual finding. I'm not questioning that. You were saying it's not subjective, substantive, and I'm basically agreeing with you. It's still going to dissolve the lease if they don't comply. I think that is true, Your Honor. I think eventually that that would dissolve the lease. I think if Judge Brown had found that they did not have substantial completion, he'd have been well within his authority to say that they didn't do anything. They did not get close enough. And under Civil Code 2014, they didn't comply with their obligations. And therefore, the lease is going to be dissolved and that asset's going to be taken out of the Chapter 11. But what does that matter? Where we are in this case. The decision that it was substantially completed, I mean, that is a critical judgment by Judge Jerry Brown. What I'm saying is it doesn't matter whether it's suspensive or resolutory. I think that would be correct, Your Honor. Once we get to the substantial completion under 2014, I think that would be correct because they have partially complied with the contract and they would be allowed to complete performance as long as it does not substantially affect their rights. That's correct, Your Honor. Now, when that is one part of it, once we get to Civil Code Article 2014, you know, substantially affect their rights. We have nothing in the record. Nothing has been provided at all by ABAR talking about what is the substantial effect on their rights as the lessor because it was not paid timely. Nothing has been put in the record at all. We haven't seen any debt service that they would have that they wouldn't be able to do. There was no forced sale from the Bucure Commission. There was nothing. It was really an arbitrary date that we spent $300,000, replaced 37 windows. I'm not sympathetic about that part of it because it's an arbitrary date based on the fact that for five years you delayed making repairs. Yes, Your Honor, which was the whole reason why we had to go into Chapter 11, put new management in place and get the company reorganized, which thus far has been quite successful. When we're on, you need to find a website. What's the name of the bar? The name of the bar is Mango Mango Daiquiris. Oh, OK. It's on the right there on Bourbon Street on the corner of the Conti. When we are talking about the substantial performance, you know, what the judge did when we're taking the main asset in this Chapter 11 and doing the fact finding on it, when he saw that we had done $300,000, he saw that we substantially performed and then he forced us, we had to put $30,000 to $40,000 in escrow to make sure we were going to complete those repairs and that completed the cure. We had to serve throughout that time. And I understand, Your Honor, there was delay before that. Certainly, that's the record is very clear on that. But once we started that, we had to serve a lot of masters over the six months. So you say the 30 to 40,000 is for repairs that had not been completed as of sometime in 2014? Or was that for adequate, essential, adequate assurance going forward? That was for adequate assurance going forward for some of the deficiencies as of December 31, 2012. So that was really still part of the substantial completion. That would have been the additional part that would have brought it. It would have brought it to completion. So there's no adequate assurance. Going forward, as you would have to have under under 365. Your Honor, we had an assurance of future performance is normally a statutory condition of 365. Yes, Your Honor. And, you know, we had Danny Shaw, who was the referee, who was ordered to provide a report. I don't care what I don't care what the past was. The point is, when you you know, if you're if you're elite, you know this. I'm not you know what adequate assurance is. That means you have some kind of escrow or something in case you fall behind on the rent or the roof falls in or something. Maybe insurance. It can parties can negotiate it, but you don't have it here. Your Honor, that 30 to 40 thousand dollars was to cover any additional repairs and anything that was getting uncovered. I mean, this is a 200 year old building. And so that was part of the problem during that six month time period is we would go in and we would fix one thing. And then there would be three or four other things that the commission in there for 15 years. So, again, you know, that's not either here nor there. I was I was trying to help you out by suggesting that, in effect, Judge Brown treated this as a regular 365, therefore, you know, basically fulfilling it by treating this 30 to 40 thousand as adequate assurance of future performance. But now, from what you say, that's not clear to me. No, Your Honor, I believe that is exactly what he was doing. I think that he was doing both things. He was assuring that whatever additional punch list items were still on there as of January of 2013, those were going to be done, as well as if there is anything in the future. Once again, we're dealing with this 200 year old building. If there's anything in the future that should arise, that this company would have assurances that we would get it done during this entire time. We are still making all of the payments that were required, not just to them, but to all the creditors. And that's something I know that here we're looking at everything in a vacuum where it's just two parties. But we have millions of dollars that are owed to other creditors and all of them. Everyone is depending on this one asset that's in the Chapter 11 right now that this is based on. This is creating the cash flow. That's not the issue. I understand, Your Honor. I'm just showing that there were other concerns as well when Judge Brown was looking at this. Of course, he has to follow the law. But in his deference and seeing that there was substantial completion, it was also when we look at kind of the whole overarching goals of what we have for a Chapter 11 reorg, we want to do everything we can to put them in a position to be successful. And I think that's exactly what Judge Brown did. This is what every debtor says. Stray back to the law, if you. The other question, why don't you bring up the attorney's fees, if you? Yes, Your Honor. The attorney's fees, we have right now two different attorney's fee issues. One of them is not before this court by Judge Jolivette Brown. She remanded it back to Judge Jerry Brown. And that was about the pre-assumption fees? That is correct, Your Honor. The pre-December 31, 2012 fees back. She didn't see anything in the record saying where they were waived. She sent it back to Judge Jerry Brown saying do fact finding on it to see if they are due. And if they are due, make a determination of how much. What is before this court is Judge Brown's decision where he gave for a window of attorney's fees after the December 31, 2012 forward until the cure was completed. He provided for attorney's fees. The only thing we say on that, Your Honor, is that that was not no motion was made before him. That was not before Judge Jerry Brown at the time. So there was no fact finding. He had contemplated that in 14 days there would be some applications on that. Let me ask you, my problem about reviewing that, I have a procedural problem and a substantive problem. My procedural problem is I don't see how you can split the attorney's fee baby for appellate purposes since there's no quantum of attorney's fees. And I think it's I know it's true in federal jurisprudence. I think also in bankruptcy, by the way, that these issues stand on their own as a separable item. So I'm not sure why we ought to review that issue at all. If we did. My substantive argument, my substantive question is how he could just arbitrarily cut it back to December 31 of 12 and not give them what they're entitled to under 365. Yes, Your Honor, we would we would think that those two attorney's fee issues, instead of having them be piecemealed from one date and then the other date being remanded back, our suggestion would be that all of that, whatever is before the court right now, the December 31st, 2012 forward, that that be remanded back to Judge Brown for fact finding, because we don't have it right now for fact finding on if they're owed and if they are owed, how much is owed. Join that with what has already been referred back to him by Judge Gillibrand, which I take it he hasn't ruled on yet. He has not ruled on. He's decided to go ahead and wait to see what happened on the appeals before he did that fact finding. And then but if we could send that portion of what is currently before the court, remand that back for fact finding on if it is owed and if it is owed, what would be an amount. So then he would have both things before him and it would be very clear that what decision and then what. Let me ask you in your experience, I assume you have experience in the bankruptcy law and in your experience. I mean, I'm aware that there are a lot of agreements made on 365 assumptions, but how many of those agreed orders are in derogation of, that is to say, do not necessarily provide for the reimbursement of the damages and adequate assurance? Your Honor, I would say it's all over the map. I mean, as we've seen in this case, we have different orders that were prepared by different counsel delineating whatever items were important to them. It isn't like they went through a check sheet and put in each time there was one of their cure items that they wanted to include under A, B, and C. So in essence, sometimes the parties will agree to less than the landlord might be entitled to under the statute. I think that is exactly right, Your Honor. And I think that's not only done in this case. I think it's done in many cases. What we would ask for, Your Honor, we would ask this court to affirm the district court, also to affirm the bankruptcy court decisions that that lease was assumed and that this asset, that is the main asset in this Chapter 11, could continue to service that Chapter 11 debtor and hopefully we'll be able to come out of bankruptcy in 20 months and be a standalone company. Thank you. All right. Thank you. Mr. Lilly. As quickly as I can, addressing several items Your Honor just raised. With respect to whether or not certain agreed orders are entered into that deviate from 365, just in this case, the only other lease which was assumed, that lease, which I've provided you guys, Your Honors, a copy of, it's tabbed at 12 as well, and it's in the record at 1250. They checked each of the three boxes. They cured, they provided a checklist. I'm sorry, I'll let you get there, but I only have four minutes. If you go to, Abby, I think it's tab 12, and it's. That's okay. Okay, I'm sorry. They provided for cure. They stipulated that there was stipulation of no pecuniary loss, meaning no attorney's necessary, and then stipulated a separate section on adequate assurance, that no other adequate assurance, whether for cure or for future performance, was necessary. Just right down the street, a month before, that's how you assume a lease. What were they assuming in that one? They were assuming an identical lease at 201 Bourbon, another mango daiquiri shop. There are two mangoes and the old absinthe house. Those are their three businesses. With respect to that, yes, they all are over the map, but in this case, it's clear. When they wanted to assume a lease, they did. Two, 2014, the application of 2014, Article 2014, substantial completion. As Your Honor sat on court with Judge Rubin back in 1988, just a few years ago, just a few years after 2014 was revised, and Judge Rubin held. 2014, in the comments, specifically says this does not change the law, it does not apply to anything other than construction contracts and hauling, clearing of land. Substantial performance now, in the 30 years since, the Louisiana Supreme Court has never applied it to a lease situation. Now, it's become cottage industry for landlords and tenants to bicker over this because a Just say 2014, it's a long-term lease. We're halfway through, you can't throw us out. But that is not how the law works. Judge Rubin saw it in 1988, and it hasn't changed since. Third, suspensive condition, the subject to. This court has actually reviewed one of Judge Brown's rulings, where in the Crutcher-Tufts ruling in 2007, I cited in all my briefs, his definition of suspensive condition was mutually acceptable performance criteria. Your Honors adopted that as a suspensive condition, actually cut and pasted his own ruling, essentially saying if you've determined what the acceptable behavior is, that is going to become that suspensive condition. Here, subject to, every commentator recognizes that the word subject to means it's a suspensive condition. Judge Brown recognized it, too. When he ordered us to brief on it, he just never did the analysis necessary. Third, adequate assurance of future performance. We approached Judge Brown at the Cure Trial, and this is at a, this is, this is, and basically what he said was, this is a, we're getting over Cure today. My trial is about Cure. If we need to have another hearing on adequate assurance of future performance, I'll let you know. You cannot build in, especially with that, especially in the Fifth Circuit. The Richmond leasing cases, it's clear that we go way back into these parties' history to determine what's going to be necessary for adequate assurance of future, is it just going to be escrow? Is it just a personal guarantee, or are we really going to look at how these guys behaved in the ten years prior, and even during this bankruptcy? Time and again, we refer to this as their dress rehearsal, adequate assurance of future performance. Lastly, if I can have just several more moments, I've also provided you with a transcript of a hearing from February 20th. This was a hearing which was held in response to my objection to Judge Brown's extending the Cure period. Remember, we, we agreed contractually December 31st was going to be our day. He gave them until February 28th. I immediately objected. This hearing, and I, and I don't know the best way to illustrate it. I've, I've given you excerpts, but basically, this hearing demonstrates, one, that he, you know, a month before trial assured us December 31st is the date. As long as you're not complaining about an unpainted wall, you're going to be fine. If you, but . . . Well, he did find, just to pursue, that they did comply with the Vieux Carre restrictions by December 31, didn't he? No, he did not. Okay, but he . . . By 1231. That's why he awarded us our attorneys. Well, he found something about that, but, so it was later on he found that they complied with them by the date of, by March 26th. Well, the last word in this matter was from Danny Shaw. He inspected this place on February 18th. We have a one-page email from an inspector who, in early January, looked at this and said, just basically said, yeah, it looks okay. Then the director of the BCC, Larry Hesdorfer, who just retired, he came and testified and admitted under Cross every bit of brick that we showed him. He said, yeah, that's, that's inappropriate. Yeah, that's inappropriate. Yes, and then essentially said, well, I'd have to see the place in order to really be of help. He admitted that he hadn't seen the place. I mean, he wasn't involved. They sent him. There's no real testimony, but that's not why we're here. We're here for the contract interpretation and the suspensive condition in this December 31st deadline, which we were promised not only by the debtor, but by Judge Brown himself. Okay. Thank you. All right. Thank you very much.